ROBERT SPINELLI, Respondent, *v.* JAMES LICORICH et al., Appellants.

First Department, December 9, 1965.

*Bernard Meyerson* of counsel (*Gordich & Cohen*, attorneys), for appellants.

*Joseph W. Nunan* of counsel (*Bierman, Kaiser & Hirsch*, attorneys), for respondent.

*Per Curiam.* This in an action for damages for personal injuries suffered by the plaintiff December 15, 1963 when he was struck by a car owned by one defendant and operated by the other. The evidence indicates that when plaintiff started to cross this uncontrolled intersection (i.e., without traffic lights) at St. Ann's Avenue and East 150th Street, where the accident

occurred, northbound traffic on St. Ann's Avenue was stopped by a traffic signal at 149th Street and St. Ann's Avenue. After partially completing his passage he looked again, observed northbound traffic still unmoving and continued his journey. All witnesses agree the block from 149th Street to 150th Street is a very short block. The defendant estimated it at five-car lengths, roughly 40 to 50 feet, and others at approximately 100 to 150 feet. The defendant estimated his speed at 15 miles per hour. This would be about 22 feet per second. The defendant first testified on direct examination that his car was "a little ways past the excavation" when first he saw the plaintiff, but on cross-examination amended it to say he was right at the excavation. According to the testimony of the police officer plaintiff was lying on the east side of St. Ann's Avenue next to a parked car and approximately 10 to 15 feet distant from defendant's car. Defendant testified that while stopped for the traffic light he had a clear unobstructed view up to Westchester Avenue (one block north of 150th Street), yet never saw the plaintiff until immediately prior to the impact.

Defendant's testimony appears unreliable in other respects. In view of the distance traversed by plaintiff prior to the impact, had defendant looked, as he testified, he must at some time have observed this plaintiff prior to the occasion involving the accident. Although this accident happened between 7:00 and 7:30 P.M. on December 15, 1963, defendant remembered the street lights coming on only when he went to get the police after the accident. Nevertheless, he was purportedly driving with his regular bright lights for city driving. Moreover, at the trial he insisted that there was room for his car, a row of parked cars, and a third car, while at pretrial he had stated that the street was only two lanes wide, including parked cars. He conceded that he had swung to the right of an obstruction on a single lane road, while a car ahead of him had passed on the left. The jury might well have inferred that he was trying to pass the car preceding him on its right, in violation of basic rules of the road.

Since this was an uncontrolled intersection plaintiff, a pedestrian, crossing at a crosswalk had the right of way (Traffic Regulations of the City of New York, § 41[a]). The evidence raised questions of fact for the jury which preclude any determination that plaintiff was guilty of contributory negligence as a matter of law. Nor, on this record, can we conclude that the verdict, as found, was against the weight of the evidence.

There was very slight, if any, basis for any grounding of a charge of negligence on the part of plaintiff upon section 41(c) of the Traffic Regulations of the City of New York. But at any

rate the refusal so to charge, if error at all, was at most harmless error for the court did charge as to plaintiff's duty and responsibility.

The judgment appealed should be affirmed, with costs and disbursements to respondent.

RABIN, J. (dissenting). Based on the plaintiff's own testimony, and disregarding the testimony adduced on behalf of the defendant, I cannot but come to the conclusion that the plaintiff was guilty of contributory negligence as a matter of law, and consequently I would dismiss the complaint. I would dismiss the complaint for the additional reason that the plaintiff's story is incredible and, further, because I cannot find anything in this case to establish any negligence on the part of the defendant. Short of dismissal, and at the very least, I would reverse the judgment, set the verdict aside and order a new trial because the verdict is against the weight of the credible evidence.

The plaintiff was struck by the defendant's automobile while crossing from west to east on St. Ann's Avenue at an unmarked crosswalk just south of 151st Street. On direct examination he testified as to how the accident occurred as follows: " A. Before I stepped off the curb, I looked to my right. I saw — I saw crosstown vehicles going across. Then I turned and looked to my left and I saw nothing coming on that side either. And then I resumed on walking. As I got out into the middle of the street, I decided to turn and look again both ways. And I resumed on walking. Then, when I got to the middle of the street where I was walking, all of a sudden I saw lights and all of a sudden I got hit in a matter of seconds."

The cross-examination of the plaintiff was more illuminating. It appeared that there were two sets of street car tracks on St. Ann's Avenue; one set which may be called the southerly tracks, and the second set, northerly tracks. The plaintiff testified that when the accident happened he had already crossed two tracks, i.e., the downtown tracks on the westerly side of the street and he " was going into [the] third track ". He said, " the downtown trolley tracks would be behind " him, " and the uptown trolley tracks would be in front of " him.

It developed that the easterly side of St. Ann's Avenue — in the area of the crosswalk where the plaintiff was struck — was under repair. It further developed that at the point where St. Ann's Avenue was being repaired, there was an excavation with cobblestones around it, the entire area being surrounded by a barrier. The uncontroverted testimony was to the effect

that the excavation was about 6 feet long, 4 or 5 feet in width, and that the cobblestones were piled up to a height of about 5 feet. The plaintiff placed the construction work between the uptown set of trolley tracks. In other words, right in the vicinity where he claims to have been struck. He also testified that the excavation was to his right and, therefore, just south of the crosswalk. It is apparent then that if he were behind the excavation he would be effectively obscured from vision by traffic traveling north.

As indicated, the plaintiff testified that before stepping off the curb he looked to his right. There was no traffic coming north. He said he could see that northerly traffic was stopped by a red traffic light just south of 149th Street. He testified further that when he got out in the middle of the street he looked a second time. At that time he had already crossed the southbound tracks. He was asked: " Q. Did you look to your right down toward 149th Street? Did you see anything? " A. No, I saw that traffic was still standing still and I kept walking." In other words when he supposedly looked the second time, he was in the vicinity of the obstruction. " At that particular time " he saw the traffic still standing on 149th Street, and that there were no cars going uptown. At that point he said: " All of a sudden I saw lights and all of a sudden I got hit ". Such testimony is incredible. It would have been a physical impossibility for the vehicles to have left 149th Street — which was, according to the maps on public record, approximately 275 feet distant — and to have reached the plaintiff within the time period he himself described.

It is quite apparent that he did not look for a second time for if he had done so he would have seen the defendant's automobile. Nor can we accept the possibility that he looked but did not see. Plaintiff " was bound to see what by the proper use of [his] senses [he] might have seen. The statement that a witness does not see what [he] should have seen is incredible as a matter of law " (*Weigand* v. *United Traction Co.*, 221 N. Y. 39, 42). The only conclusion one can come to in the light of the facts as developed is that the plaintiff stepped from behind the barrier without looking. Consequently, we must find that on the plaintiff's own testimony, he was guilty of contributory negligence as a matter of law and the complaint should be dismissed. And it should be dismissed for the additional reason that the plaintiff's story is absolutely incredible.

Nor is there any evidence to indicate in what respects defendant was proven to be negligent. There was no proof that he

was driving at an excessive rate of speed, that his automobile in any was was malfunctioning, or that he operated the same in a careless manner. There was no proof that he observed the plaintiff before the impact, or that in the exercise of reasonable care he should have observed him. To the contrary the presence of the piled-up bricks around the excavation between him and the plaintiff made such observation well-nigh impossible. Absent any such proof how can the jury's finding of negligence be supported? The answer is that it is unsupportable and may not stand.

As indicated, I arrive at the above conclusions without taking into consideration the testimony of the defendant which, if believed, would completely exonerate him from any liability. I do note, however, that the defendant's testimony is entirely consistent with and bears out the only conclusion that can be reached with respect to how the accident must have occurred, i.e., that the plaintiff stepped out from behind the obstruction at about the moment defendant's vehicle reached the place of impact.

Even were there to be a basis for concluding that the complaint may not be dismissed, the judgment nonetheless should be reversed and a new trial ordered. In the light of the uncontroverted facts, as hereinabove set forth, a verdict finding defendant guilty of negligence and plaintiff free of such conduct is clearly contrary to the weight of the credible evidence.

Moreover, I am of the opinion that it was reversible error for the trial court to have refused to charge section 41(c) of the Traffic Regulations of the City of New York as requested by defendant. That section provides that "no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield." In the light of the proof in this case the jury could well have found that plaintiff having stopped behind the pile of cobblestones, suddenly moved out in front of defendant's vehicle. If such a permissible finding had been made, section 41(c) would have been applicable and should have been made available to the jury. I do not accept plaintiff's argument that the "place of safety" referred to in the section does not include a position behind the pile of cobblestones and barrier here involved. Certainly, one remaining at that place would be absolutely safe from traffic dangers. To say that only a particular and officially designated "place of safety" was intended, is to ignore the obvious purpose of the statute and the result it sought to achieve.

BOTEIN, P. J., BREITEL and STEVENS, JJ., concur in *Per Curiam* opinion; RABIN, J., dissents in opinion; McNALLY, J., dissents and votes to reverse and order a new trial for reasons set forth in Justice RABIN's opinion.

Judgment affirmed, with $50 costs to respondent.